# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

MARY C.[1],

                                             Plaintiff,

    v.                                          5:17-CV-927 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                             Defendant.

HOWARD D. OLINSKY, ESQ., for Plaintiff
CATHERINE ZURBRUGG, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed[2] applications for Disability Insurance Benefits ("DIB")

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

[2] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

and Supplemental Security Income ("SSI") on June 20, 2014, alleging disability beginning March 1, 2011. (Administrative Transcript ("T") at 24, 183-90). Her application was denied initially on September 25, 2014. (T. 80-107). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 3, 2016. (T. 52-79). On August 26, 2016, ALJ John P. Ramos found plaintiff was not disabled. (T. 21-35). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on June 26, 2017. (T. 1-7).

## II.  GENERALLY APPLICABLE LAW

### A.  Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more

3

than a scintilla" of evidence scattered throughout the administrative record. *Id*. However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. **FACTS**

As of the date of her administrative hearing, plaintiff was 58 years old. (T. 55, 272). She is a high school graduate who resided alone, but had frequent visits from her son and grandchildren. (T. 35, 67, 583).

4

Plaintiff's employment history included work as an office clerk, housekeeper, and janitorial supervisor. (T. 57-61, 233). Her physical impairments largely stemmed from two workplace injuries. In 1999, plaintiff fractured her left tibia and fibula after slipping on a wet floor, but was eventually able to return to work. (T. 582). In early December 2009, plaintiff fell on ice at a job site while working for the janitorial company, and suffered injuries to her right shoulder, back, and right leg. (T. 57-59, 582). She returned to work for a short period after receiving treatment for these injuries, but was laid off in late December 2009. (T. 59).

Plaintiff did not return to full-time employment after being laid off. Beginning in August 2012, she was paid to take care of a friend's elderly father for about five hours each weekday. (T. 233). This position ended when the gentleman passed away in June 2014. (T. 77). Plaintiff testified that this work typically involved sitting with the man, helping him with shaving and grooming, preparing meals, performing light housework, and guiding him into and out of a chair or bed. (T. 59-60). She testified that this work did not involve any lifting. (T. 77).

Plaintiff testified that her shoulder, back, and leg injuries caused her considerable pain, and made it difficult to stand, walk, or sit for extended periods. (T. 66-68). Washing dishes and other housework caused her considerable pain, and required frequent breaks. (T. 73-74). She had difficult reaching overhead with her right arm, and became light-headed when she had to bend or stoop. (T. 73, 582). She used a cane for balance when walking, and had difficulty with stairs. (T. 582, 584).

The ALJ's decision and the parties' pleadings provide a detailed statement of the

medical and other evidence of record. (T. 26-29). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV. THE ALJ'S DECISION

After finding that plaintiff met the insured status requirements through September 30, 2015, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 1, 2011. (T. 26). Next, the ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: a history of dizziness; earache; neck, low back, and shoulder pain; and status post open reduction and fixation of a left tibia and fibular fracture. (T. 26-27). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 27).

The ALJ found at step four of the analysis that plaintiff had the residual functional capacity ("RFC") to perform almost the full range of medium work. (T. 27-29). Specifically, he found that plaintiff should not work at unprotected heights, but could occasionally climb ladders and scaffolds and balance at heights. (T. 27). He also found that plaintiff could occasionally be exposed to moving mechanical parts and could operate a motor vehicle. (*Id*.) In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and

6

416.929" and Social Security Ruling ("SSR") 96-4p. (*Id*.) Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id*.)

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record evidence. (T. 28). The ALJ then determined that plaintiff was capable of performing her past relevant work as an office clerk. (T. 29). Accordingly, the ALJ decided that plaintiff was not disabled from March 1, 2011 through the date of the ALJ's decision. (T. 30)

## V. ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1. The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 16-21) (Dkt. No. 12).

2. The ALJ failed to fully and fairly develop the record by re-contacting plaintiff's treating physician's regarding his opinion. (Pl.'s Br. at 21-23).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 7-16) (Dkt. No. 17). For the reasons stated below, the court concludes that the ALJ erred in evaluating the medical opinion evidence, and finds that his RFC determination was not supported by substantial evidence. As a result, the ALJ's ultimate finding that plaintiff was not disabled was tainted. Therefore, the court orders a remand for further administrative proceedings to

7

properly assess the medical evidence related to plaintiff's impairments in connection with the Commissioner's RFC determination.

## DISCUSSION

## VI.    RFC EVALUATION/TREATING PHYSICIAN

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y.

1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### B. Application

The ALJ found that plaintiff could perform almost the full range of medium work. (T. 27). Medium work is defined as

> . . . lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to

9

the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) However, there are relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at time (or involve equivalent exertion in pushing and pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

SSR 83-10: Titles II and XVI: Determining Capability to Do Other Work - The Medical Vocational Rules of Appendix 2, 1983 WL 31251, at *6 (January 1, 1983).

In reaching this RFC determination, the ALJ gave "great weight" to the opinion of Dr. Sree Devi Chandrasekhar, a non-examining consultant who reviewed plaintiff's medical records and responded to the ALJ's interrogatory in June 2016. (T. 29, 746-754). Dr. Chandrasekhar opined that plaintiff could continuously (up to 2/3 of the workday) lift up to twenty pounds, could frequently lift and carry up to fifty pounds, and could occasionally lift and carry up to one hundred pounds.[3] (T. 749). He further opined that plaintiff could sit for up to six hours at one time, and up to eight hours total during the workday, and could stand or walk for up to four hours without interruption, and up to six hours total during the workday. (T. 750). He also opined that plaintiff

---

[3] In his determination, the ALJ erroneously stated that Dr. Chandrasekhar opined that plaintiff could "continuously" (up to 2/3 of the workday) lift fifty pounds. (T. 29).

10

could frequently push and pull, and had no limitations with regard to reaching, handling, fingering, and feeling. (T. 751). In his opinion, plaintiff could frequently stoop, kneel, crouch, crawl, and climb stairs and ramps, but could never work around unprotected heights, and only occasionally work around moving mechanical parts and operate a motor vehicle. (T. 752-53). He also opined that plaintiff could tolerate frequent exposure to humidity, wetness, dust, odors, gases, pulmonary irritants, vibrations, and extreme temperatures. (T. 754).

Plaintiff contends that the ALJ assigned excessive weight to Dr. Chandrasekhar's opinion, even though the consulting physician did not examine plaintiff. An ALJ is entitled to rely on a non-examining consultant's opinion if it is consistent with the record evidence. *See Christy v. Comm'r of Soc. Sec.,* No. 5:13-CV-1552 (GTS/WBC), 2015 WL 6160165, at *10 (N.D.N.Y. Oct. 20, 2015) ("[A]n ALJ may rely on the opinions of non-examining medical experts."); *see also Lugo v. Comm'r of Soc. Sec.*, No. 3:16-CV-746 (GTS), 2017 WL 4005621, at *9 (N.D.N.Y. Sept. 11, 2017) (collecting cases). In this case, the ALJ stated that he based his assignment of great weight to Dr. Chandrasekhar's opinion on the consultant's "thorough review of the entirety of the medical record," the opinion's "consistency with the objective findings" in plaintiff's records, and its consistency with plaintiff's "high level" of daily activity. (T. 29). However, a review of each of those cited factors fails to demonstrate substantial evidence to support the ALJ's conclusion.

First, although Dr. Chandrasekhar reviewed the entirety of the medical record (T. 746), he failed to cite any medical evidence that he relied on for his opinions regarding

11

plaintiff's limitations.[4] For example, the ALJ's interrogatory requested that the consulting physician "identify the particular medical or clinical findings (i.e., physical exam findings, x-ray findings, laboratory test results, history, and symptoms including pain, etc)" that support the described limitations for lifting, carrying, sitting, walking, and standing. (T. 749-50). Dr. Chandrasekhar left these sections blank. (*Id*.). Likewise, the opinion does not include any narrative to explain what records that the consulting physician relied on to assess plaintiff's ability to reach, handle, finger, feel, or reach. (T. 751). The resulting "check-box" nature of the consulting physician's opinion reduces its use as substantial evidence to support the RFC determination. *See Mix v. Astrue*, No. 09-CV-16, 2010 WL 2545775, at *5 (W.D.N.Y. June 8, 2010) ("[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

In addition, it is unclear from the decision what objective clinical evidence in the record that the ALJ found consistent with Dr. Chandrasekhar's opinion. A December 29, 2014 imaging report showed that plaintiff's lumbar spine and both hips were osteopenic.[5] (T. 709). X-rays consistently showed osteoarthritic and degenerative changes in plaintiff's cervical spine. (T. 492, 589). During examinations, plaintiff demonstrated tenderness at the sacroiliac joint and hips, decreased range of motion in

---

[4] Dr. Chandrasekhar did cite records that supported his diagnosis that plaintiff's impairments were neck, lower back and shoulder pain, and post-status of open reduction and fixation of the left tibia and fibula fractures. (T. 746).

[5] Osteopenia is a loss of bone density that has not yet reached the level of osteoporosis. https://www.webmd.com/osteoporosis/guide/osteopenia-early-signs-of-bone-loss

12

the shoulders, and a stiff gait that improved when she used a cane for balance. (T. 288, 291, 584, 585). These clinical findings would appear inconsistent with Dr. Chandrasekhar's description of minimal limitations with regard to standing, walking, sitting, lifting, and carrying. (T. 749-50).

Finally, the ALJ's reliance on what he deemed plaintiff's "high level of daily activity" is "a very weak basis" for the great weight assigned to Dr. Chandrasekhar's opinion, because all of the activities described were performed at a rate other than eight hours a day, five days a week. *See Mallery v. Berryhill*, No. 3:17-CV-587 (DEP), 2018 WL 1033784, at *4 (N.D.N.Y. Feb. 22, 2018). The ALJ's conclusion that "[t]hese activities require many of the same functions that plaintiff alleges she is unable to perform in a work setting" is also inconsistent with the record evidence. (T. 29). For example, plaintiff reported that she cooked every day, but that she typically used the microwave or made other easy to prepare meals because she could only stand for approximately twenty minutes. (T. 252-53, 583). She also testified that she kept items on her kitchen counter to minimize reaching into higher cabinets. (T. 75). She cleaned the house and did laundry on a regular basis, but testified that she took frequent breaks and received assistance from her children and grandchildren. (T. 73, 583). Her hobbies included watering her indoor and outdoor plants, and spending time with her four grandchildren. (T. 29). Her son assisted with more difficult tasks that required bending or lifting, such as weeding. (T. 253). She testified that her grandchildren, three of whom were teenagers, occasionally stayed overnight, but that she did not babysit them or provide regular childcare. (T. 77).

The ALJ also found that plaintiff's care for an elderly man after the alleged onset date demonstrated that "her abilities have been greater than she has reported." (T. 29). However, the only evidence cited for this conclusion is a September 12, 2013 treatment note, in which plaintiff described the position as "minor cleaning and helping to feed patient." (T. 287). The treatment note also states that the position involved "NO lifting at all." (*Id.*) (emphasis in original). This description, which predates plaintiff's July 30, 2014 application for benefits, is almost identical to plaintiff's testimony regarding the position. (T. 59-60, 77). Beyond his conclusory statements, the ALJ did not explain how plaintiff's ability to perform this work supported Dr. Chandrasekhar's opinion.

In addition, Dr. Chandrasekhar's opinion was inconsistent with the other medical opinions in the record. For example, Dr. Myra Shayevitz performed a consultative physical examination of plaintiff on August 25, 2014. (T. 582-89). She opined that plaintiff had marked limitations for prolonged sitting, standing, walking, repetitive stair climbing, bending, heavy lifting, or overhead lifting with her dominant (right) arm. (T. 586). The ALJ assigned this opinion "less weight," solely on the stated basis that it was "rendered after only a one-time examination without the benefit of a review of the claimant's entire medical record." (T. 29). In discounting Dr. Shayevitz's opinion, the ALJ did not discuss any portion of the consultative examiner's narrative report, including her extensive evaluation of plaintiff's musculoskeletal system. (T. 585-86).

Plaintiff's treating physician, Dr. James Augustine, prepared several opinions regarding plaintiff's functional limitations. (T. 603, 617-20, 705-706). In a March 9, 2011 opinion, Dr. Augustine opined that plaintiff could lift and pull up to thirty pounds.

14

(T. 705-706). The ALJ assigned this opinion "some weight" in light of Dr. Augustine's role as a treating physician. (T. 29). In subsequent opinions issued in April 2016, Dr. Augustine opined that plaintiff was permanently disabled and unable to work. (T. 603, 617-620). The ALJ gave no weight to these opinions, because they addressed conclusions on issues that were reserved to the Commissioner. Indeed, such a conclusory statement of disability is not binding on the ALJ. *Michels v. Astrue*, 297 F. App'x 74, 76 (2d Cir. 2008) (citing, *inter alia, Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *Veino*, 312 F.3d at 588. *See* 20 C.F.R. § 404.1527(e)(1) (a statement by a medical source that a claimant is "disabled" does not mean that the Commissioner will make that determination). The ALJ also noted that these opinions did not provide a function-by-function assessment of plaintiff's functional abilities and limitations. (T. 29). The ALJ was correct that Dr. Augustine did not fully complete this portion of the form. However, when listing plaintiff's symptoms, Dr. Augustine stated that plaintiff "can stand or walk for 15 min at a time." [6](T. 617).

In this case, the ALJ was presented with a conflict between Dr. Chandrasekhar's non-examining opinion, which provided minimal evidentiary support for very specific functional limitations, and the opinions of Dr. Augustine and Dr. Shayevitz, which provided a more general assessment of plaintiff's functional limitations but were clearly premised upon their examinations of plaintiff. One proper method of resolving this

---

[6] Dr. Augustine provided another opinion to the Appeals Council, dated October 15, 2016, that plaintiff's back pain was made worse by extended standing and sitting, and that she could stand or walk for only fifteen minutes at a time. (T. 18). He also repeated his non-binding conclusion that plaintiff was permanently disabled. (Id.)

15

conflict would be to re-contact plaintiff's treating physician, Dr. Augustine, to clarify his opinion regarding plaintiff's functional limitations.[7] 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1). The ALJ may have also been able to resolve the conflict with a more comprehensive review of the basis for Dr. Shayevitz's consulting opinion. *See Frawley v. Colvin*, No. 5:13-CV-1567 (LEK/CFH), 2014 WL 6810661, at *9-10 (N.D.N.Y. Dec. 2, 2014) ("The opinions of consultative examiners . . . may constitute substantial evidence where, as here, is it supported by the medical evidence in the record.").

Instead, the ALJ based his RFC determination on the non-examining consultant's opinion, without adequately identifying the medical or other evidence that would support such reliance. Accordingly, the ALJ's RFC determination, and the resulting determination that plaintiff could perform her prior work, were not based upon substantial evidence. On remand, the Commissioner should properly address the totality of the medical opinion and other evidence regarding plaintiff's functional limitations, assess and articulate plaintiff's RFC with sufficient specificity, and present the evidence upon which the Commissioner relies to support the RFC determination.

---

[7] The regulations previously provided that when the treating physician's report contained "a conflict or ambiguity" that must be resolved, the ALJ was required to "seek additional evidence or clarification" from that source in order to fill in any clear gaps before rejecting the doctor's opinion. *Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 504-505 (S.D.N.Y. 2014) (citing *inter alia Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010); 20 C.F.R. §§ 404.1512, 416.912 (2010)). The regulations were amended, effective March 26, 2012, to allow the ALJ greater flexibility in resolving such insufficiencies or inconsistencies in the record. *Lowry v. Astrue*, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (citing How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,656 (Feb. 23, 2012) (to be codified at 20 C.F.R. § 416.912) (deleting former paragraph (e) and redesignating former paragraph (f) as paragraph (e)). Because the ALJ's decision is dated August 26, 2016, the amended regulations apply.

## VII. NATURE OF REMAND

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). Even though the ALJ's decision is not supported by substantial evidence, this court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled." Thus, I cannot order a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Memorandum-Decision and Order.

Dated: September 28, 2018

*[signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge